# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-60608

—————————

Memorial Hermann Accountable Care Organization,

*Appellant*,

*versus*

Commissioner of Internal Revenue,

*Appellee*.

_____

Appeal from the United States Tax Court
Agency No. 4412-22X

_____

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Haynes, *Circuit Judge*:

Memorial Hermann Accountable Care Organization ("MHACO") appeals from a judgment of the United States Tax Court, which rejected MHACO's claim that it is an organization described in I.R.C. § 501(c)(4) and thus exempt from federal income tax. We conclude that MHACO is not entitled to a § 501(c)(4) tax exemption and therefore AFFIRM.

## I.    Background

### A.  MHACO and the Medicare Shared Savings Program

MHACO is a nonprofit corporation formed under Texas law in 2012. Since then, it has participated as an "accountable care organization," or

ACO, in the Medicare Shared Savings Program ("MSSP"), a program established under the Patient Protection and Affordable Care Act. 42 U.S.C. § 1395jjj(a)(1)(A). ACOs are groups of health care providers who "work together to manage and coordinate care" for Medicare beneficiaries. *Id.* If an ACO satisfies cost-savings benchmarks established by the Secretary of Health and Human Services, the ACO is eligible to share in the savings thereby achieved for the Medicare program. *See id.* § 1395jjj(d)(2).

Of the patients assigned to MHACO, approximately 10% are part of MSSP. An additional 9% are covered by Medicare Advantage Plans administered by commercial insurers. The remaining 81% are covered by employer-sponsored health plans through commercial insurers. MHACO provides no services for people without insurance.

The proportion of MHACO's annual revenue that derives from MSSP varies year to year. For example, in fiscal year 2014, none of MHACO's $7.8 million in revenue came from MSSP. The next year, however, 87% of MHACO's $32.8 million in revenue derived from MSSP. MHACO claims that 65% of its revenue over the course of its life was generated by its MSSP activities.

## B. Procedural History

I.R.C. § 501(a) provides that an organization described in § 501(c) is generally exempt from federal income tax.[1] MHACO believes that it qualifies as an organization described in § 501(c)(4), i.e., that it is an entity

---

[1] I.R.C. § 501(a) is the statutory provision that provides the exemption for organizations described in § 501(c). For brevity's sake, we refer in this opinion to the tax exemption as being "under" § 501(c)(3) or (c)(4).

"not organized for profit but *operated exclusively for the promotion of social welfare*." I.R.C. § 501(c)(4)(A) (emphasis added).[2]

Accordingly, MHACO filed with the Internal Revenue Service an application for recognition as an organization described in § 501(c)(4). The IRS issued a proposed adverse determination letter concluding that MHACO did not qualify for a § 501(c)(4) tax exemption. Over MHACO's protest, the IRS Independent Office of Appeals then issued a final adverse determination letter denying the tax exemption and concluding that MHACO is "not organized and operated for the purposes of promoting the social welfare and providing a community benefit."

MHACO timely petitioned the tax court for a declaratory judgment that it is exempt from income taxes under § 501(c)(4). The tax court upheld the IRS's determination, concluding that MHACO's "non-MSSP activities primarily benefit its commercial payor and healthcare provider participants, rather than the public, and therefore constitute a substantial nonexempt purpose." MHACO filed two motions to vacate or revise, which the tax court denied. MHACO then timely appealed. *See* Fed. R. App. P. 13(a)(1).

## II.    Jurisdiction & Standard of Review

As required by I.R.C. § 7428(b)(2), MHACO exhausted administrative remedies available within the IRS before filing its petition with the tax court. The tax court had jurisdiction over the petition under

---

[2] Subparagraph (B) provides that subparagraph (A) "shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual." I.R.C. § 501(c)(4)(B). The parties do not contend that part of MHACO's net earnings inures to the benefit of a private individual or shareholder, so we do not further discuss subparagraph (B).

I.R.C. §§ 7428(a)(1)(E) and 7442.  We have jurisdiction over this appeal under I.R.C. § 7482(a)(1).

In an appeal of a final judgment entered by the tax court, we review findings of fact for clear error and legal conclusions de novo.  *Nationalist Movement v. Comm'r*, 37 F.3d 216, 219 (5th Cir. 1994) (per curiam).  "A finding that a corporation is not operated exclusively for charitable purposes cannot be disturbed unless clearly erroneous."  *Id.*

## III.    Discussion

MHACO raises three issues on appeal.  First, it argues that the tax court applied the wrong legal standard to the question whether MHACO qualifies as a § 501(c)(4) organization.  Second, MHACO contends that the tax court's review of the IRS's § 501(c)(4) determination extended beyond its appropriate scope.  Third, MHACO argues that the tax court improperly concluded that MHACO's non-MSSP activities disqualify it from exemption under § 501(c)(4).  We address each issue in turn.

### A.  Legal Standard

To determine whether MHACO qualifies as an organization "*operated exclusively* for the promotion of social welfare," I.R.C. § 501(c)(4)(A) (emphasis added), the tax court applied a "substantial nonexempt purpose" test.  MHACO argues that the tax court instead should have applied the "primary purpose" test found in 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i), which MHACO contends is distinct from the substantial nonexempt purpose test.  Our court has not previously decided the legal standard applied specifically to § 501(c)(4).

The substantial nonexempt purpose test comes from *Better Business Bureau of Washington, D.C. v. United States*, a case in which the Supreme Court construed § 811(b)(8) of the Social Security Act ("SSA").  326 U.S.

279, 283 (1945). SSA § 811(b)(8) provided a tax exemption to certain entities "organized and *operated exclusively* for . . . educational purposes." *Id.* at 280 n.1 (emphasis added) (quoting SSA § 811(b)(8)). The Court concluded that to fall within SSA § 811(b)(8), "an organization must be devoted to educational purposes *exclusively*," which "*plainly means* that the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes." *Better Bus. Bureau*, 326 U.S. at 283 (emphasis added).

This "substantial nonexempt purpose" test governs cases under I.R.C. § 501(c)(3). *See, e.g.*, *Nationalist Movement*, 37 F.3d at 220. Indeed, the SSA provision construed by the Court in *Better Business Bureau* was "identical in relevant respects to . . . section 501(c)(3)." *Alive Fellowship of Harmonious Living v. Comm'r*, 47 T.C.M. (CCH) 1134, 1140 (T.C. 1984).

This case involves § 501(c)(4), which exempts entities "operated exclusively for the promotion of social welfare." Although that provision and § 501(c)(3) both use the exact same phrase of "operated exclusively" which was interpreted by the Supreme Court in *Better Business Bureau*, MHACO argues that *Better Business Bureau* does not apply here. MHACO contends that the proper test is found in 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i), a Treasury Department regulation, which provides that an organization is eligible for exemption under § 501(c)(4) if it is "primarily engaged in promoting in some way the common good and general welfare of the people of the community." MHACO calls this the "primary purpose" test.

We disagree. It makes little sense to treat the same phrase differently in two neighboring paragraphs of the same statute. *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 381–82 (5th Cir. 2017) (stating that a "word or phrase is presumed to bear the same meaning throughout a text" (quoting Antonin Scalia & Brian A. Garner,

Reading Law 170 (2012))). Importantly, we no longer are required to provide "*Chevron* deference" to the Treasury's interpretation of § 501(c)(4) (although we can certainly consider it). *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), *overruling Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But even considering the Treasury's view, it, as party to this case through the Commissioner of Internal Revenue, argues that the substantial nonexempt purpose and primary purpose tests are not meaningfully different, as both tests interpret the phrase "operated exclusively," which appears in both § 501(c)(3) and § 501(c)(4). Thus, the Treasury does not think that § 501(c)(4) is looser than § 501(c)(3).

Cases from other circuits have endorsed the substantial nonexempt purpose test from *Better Business Bureau* in the § 501(c)(4) context. *E.g.*, *People's Educ. Camp Soc'y Inc. v. Comm'r*, 331 F.2d 923, 931 (2d Cir. 1964) (explaining that a single nonexempt purpose, if substantial in nature, takes away the exemption); *Comm'r v. Lake Forest, Inc.*, 305 F.2d 814, 815, 820 (4th Cir. 1962) (quoting *Better Business Bureau* and reversing tax court judgment that respondent was "operated exclusively for the promotion of social welfare" under § 501(c)(4) predecessor); *Mut. Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 796 (10th Cir. 1985) (holding that the "presence of a substantial non-exempt purpose" precludes "exempt status as an organization primarily engaged in the promotion of the social welfare"). Further, MHACO cites no case explicitly refusing to apply the substantial nonexempt purpose standard in the § 501(c)(4) context.

MHACO asks us to ignore the textual parallels between § 501(c)(3) and (c)(4) in favor of sparse legislative history and an inference about legislative intent based on the fact that § 501(c)(3) organizations receive more favorable tax treatment than their § 501(c)(4) counterparts. But "the Supreme Court has repeatedly and emphatically rejected the use of legislative history where the text is unambiguous." *United States v.*

*Palomares*, 52 F.4th 640, 646 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 1092 (2024). The *Better Business Bureau* decision shows that the word "exclusively," at least as used in § 501(c)(3), "*plainly means* that the presence of a single non-[exempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] purposes." 326 U.S. at 283 (emphasis added). Congress chose to use identical language in § 501(c)(4). Thus, assuming arguendo that the relevant legislative history or legislative intent supports MHACO's position, such history or intent cannot override the unambiguous text here.

MHACO additionally relies on other documents, including the Internal Revenue Manual, indicating the IRS has previously applied the primary purpose test to § 501(c)(4) determinations. As noted above, the IRS's embrace of a legal standard cannot supplant our independent interpretation of the statutory text. *See Loper Bright Enters.*, 144 S. Ct. at 2273. Nor do these prior statements bind the IRS. *See, e.g.*, *Est. of Duncan v. Comm'r*, 890 F.3d 192, 200 (5th Cir. 2018) (stating the Internal Revenue Manual "is not legally binding").

We therefore reject MHACO's argument that the tax court applied the wrong legal test. Since § 501(c)(3) and (c)(4) both use the crucial phrase "operated exclusively," the *Better Business Bureau* standard applies under both provisions.[3] Accordingly, we decline to disturb the judgment of the tax court on the ground that it applied the incorrect legal standard.

## B. Scope of Review

MHACO next argues that the tax court exceeded the proper scope of review of the IRS's § 501(c)(4) determination. MHACO reads the IRS's

---

[3] In any event, in this particular case, applying either test—"substantial nonexempt" or "primary purpose"—would lead to the same result anyway.

final adverse determination letter as rejecting the substantial nonexempt purpose test, as the letter said an organization exempt under § 501(c)(4) "may engage in substantial non-exempt activities since the test for exemption . . . is one of primary activities." The tax court thus, according to MHACO, should not have upheld the IRS's determination on the basis of the substantial nonexempt purpose test. *See Global Van Lines, Inc. v. Interstate Com. Comm'n*, 714 F.2d 1290, 1298 (5th Cir. 1983) (stating that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based" (alteration in original) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))).

Importantly, despite that statement in the letter, we read the statement in context and conclude that on the whole, the IRS's reasoning is consistent with the tax court's reasoning. The final adverse determination letter extensively discussed *Vision Service Plan v. United States*, No. 2:04-CV-1993, 96 A.F.T.R.2d (RIA) 2005-7440, 2005 WL 3406321, at *4 (E.D. Cal. Dec. 12, 2005), quoting that case for the proposition that the "presence of a single substantial non-exempt purpose precludes exempt status regardless of the number or importance of the exempt purpose." *Vision Serv. Plan*, 2005 WL 3406321, at *4 (quotation omitted), *aff'd*, 265 F. App'x 650 (9th Cir. 2008). The tax court's inquiry accordingly did not exceed its proper scope.

## C. Qualification Under § 501(c)(4)

The remaining issue is the ultimate question whether the tax court erred in determining that MHACO does not qualify as a § 501(c)(4) organization. We may only disturb the factual findings underlying this conclusion if we conclude that they were clearly erroneous. *See Nationalist Movement*, 37 F.3d at 219. Further, MHACO bears the burden to establish that it is entitled to a tax exemption. *See id.* at 220; *Haswell v. United States*, 500 F.2d 1133, 1140 (Ct. Cl. 1974) ("Tax exemptions are matters of

legislative grace and taxpayers have the burden of establishing their entitlement to exemptions.").

MHACO contends that the tax court improperly concluded that MHACO is not "operated exclusively for the promotion of social welfare" within the meaning of § 501(c)(4). It argues that its operations are intended to increase the quality and lower the cost of health care for the greater Houston community and that any benefits accruing to insurance companies, private payors, and private providers are merely incidental.

We disagree. Many private enterprises have salutary effects on the greater community. That alone does not entitle them to a federal income tax exemption. Here, MHACO's care-coordination services are not offered to the greater Houston community; rather, they are provided to people with health insurance.[4] Similarly, MHACO contends that its private insurance contracts provide it with "otherwise inaccessible patient-level data" used to "judge the success of the community benefits it aims to deliver," but it appears that MHACO only uses this data to benefit its members. MHACO's members-only benefits system counsels against a conclusion that it is "operated exclusively for the promotion of social welfare." I.R.C. § 501(c)(4); *cf. Lake Forest*, 305 F.2d at 820 (noting that membership in organization provides opportunities unavailable to individuals acting alone, which are "advantages wholly proper but nonetheless private gain"); *Contracting Plumbers Coop. Restoration Corp. v. United States*, 488 F.2d 684, 687 (2d Cir. 1973) (holding that organization was not tax-exempt under

---

[4] MHACO does not purport to directly provide services to people without insurance, but it notes that its parent company, Memorial Hermann Health System, operates hospitals that are "open to the community, including to the uninsured." MHACO, however, cites no authority suggesting that the operations or tax-exempt status of its parent company should affect our analysis of whether MHACO is eligible for tax exemption.

§ 501(c)(4) because it "provides substantial and different benefits to both the public and its private members"); *Vision Serv. Plan*, 2005 WL 3406321, at *4 ("It is frequently the case that an organization is found not to qualify under 501(c)(4) because it is operating primarily for the benefit of its members, rather than for the purpose of benefitting the community as a whole.").

Further, even if MHACO's coordinated-care services did benefit social welfare beyond its membership pool, the magnitude of MHACO's commercial activities would still exclude it from tax exemption under § 501(c)(4). *See Better Bus. Bureau*, 326 U.S. at 283. Approximately 80% of MHACO's patient population is covered by employer-sponsored health plans through commercial insurers. Accordingly, the vast majority of MHACO's operations pertain to creating cost savings that turn into revenue for insurance companies, private providers, and private payors.[5] To sum up, MHACO does not assist the entirety of Houston given its lack of addressing uninsured people who lack Medicare.

MHACO's direct benefits accrue exclusively to its members, the vast majority of whom are not a part of MSSP. Based on the evidence in the record, it is not clear that MHACO's services even indirectly benefit the broader community. For these reasons, we hold that the tax court did not

---

[5] MHACO argues that 65% of its revenue over its lifetime is from MSSP, which indicates that "the substantial majority of the medical savings MHACO has generated have been in the public health sector through the MSSP." We think the patient population breakdowns may provide a more reliable indicator of MHACO's "purpose as demonstrated by the fact of its operations," *People's Educ. Camp Soc.*, 331 F.2d at 932, particularly because contractual differences likely account for at least some of the differences in MSSP and non-MSSP revenue. Additionally, the revenue split can and does change year to year. In any event, the fact that more than a third of MHACO's revenue comes from its non-MSSP contracts further supports the argument that MHACO's commercial activities are a substantial non-exempt purpose that disqualifies it from tax exemption under § 501(c)(4). *Cf. Better Bus. Bureau*, 326 U.S. at 283.

No. 23-60608

clearly err when it determined MHACO is not "operated exclusively for the promotion of social welfare." I.R.C. § 501(c)(4).

## IV.    Conclusion

For the reasons stated above, we AFFIRM the judgment of the tax court.